Good morning, all. The first case for argument this morning is Moore & Associates v. Pappas. Mr. Davis. Thank you, Your Honor. Good morning, Your Honors. Mark Davis, arguing on behalf of all plaintiffs' appellants in the consolidated cases. May it please the Court, Defendants argue in their briefs that the Illinois tax objection procedure, under that procedure, plaintiffs are not free to bring constitutional claims at all. The premise for this argument is that the only matter at issue in the Illinois tax objection procedure is the correctness of the plaintiffs' own assessments. That process could never secure plaintiffs' federal equal protection rights. Even if plaintiffs' assessments were fully correct under state statutory law, the assessors' systematic, intentional, illegal debasement of most other assessments in plaintiffs' commercial and industrial classes violated equal protection by causing disparate inflated taxes on plaintiffs' properties. This is exactly the same equal protection violation as the U.S. Supreme Court found in the Allegheny-Pittsburgh case discussed in the briefs. Defendants ask this Court to disregard the Illinois Appellate Court's decision in the Freedman case, which was attached to the complaint. But their argument and conclusion are identical to the appellate court's. That conclusion is that constitutional claims cannot be raised in the Illinois tax objection process. That is an inadequate remedy. Mr. Davis? Yes, Your Honor. Why should one trial judges and one non-precedential appellate decisions lead us to conclude that the Illinois remedy is not plain, adequate, and complete ever? First, Your Honor, those decisions are founded directly on the language of the Illinois tax objection statute. That's the statute, really. That is correct. That is far more important here than one trial judge's decision, which may or may not be correct in the end, or one non-precedential appellate. That is correct, Your Honor, although those are the only Illinois decisions to have construed the crucial language of the statute. Right, but could the Illinois Supreme Court read the statute differently to save its constitutionality as applied to your clients? The Illinois Supreme Court could potentially do so, but the uncertainty that has been created, the unclarity in the statute that has allowed the Illinois trial court and the Illinois appellate court in Freedman to draw those conclusions, and is allowing the defendant officials to make the argument that I've just noted to this court, indicates significant uncertainty and unclarity in the remedy that is offered to Illinois taxpayers under this statute. The language of the statute states directly that if it applies, the court shall consider the objection to the tax and the assessment without regard to any of the assessor's methodology and intent. Counsel, can I ask you a question about that? Yes, Your Honor. If it applies, and my question is, I mean, it seems to me, and the defendants can tell me if I'm misunderstanding, that you're correct in how they represent the position, that Article 23 just doesn't permit these kinds of constitutional claims to be aired. But does Article 16? I guess I'm wondering is the fact that Article 23 doesn't provide you a mechanism for airing your constitutional claims wouldn't matter, wouldn't permit us to exercise jurisdiction because of the Tax Injunction Act, if you had another mechanism for airing those claims? Your Honor, I think is referring in Article 16 to the alternative remedy in the Illinois property tax appeal. Yes. And there are two reasons that remedy is of no use to these taxpayers, the first being that there's an exclusive election that taxpayers had to make. So once you're committed to the state court process and the tax objection article, you are bound to that process. The second point, though, and this was aired in the trial court, although since defendants have not raised it, we did not elaborate on it in the briefs, but the Property Tax Appeal Board has ruled that it cannot hear this kind of constitutional claim going to the levels of assessments that were applied to plaintiff's property on the one hand, the discriminatory levels applied to the other properties. And that ruling is actually in the record. It's in the separate appendix at pages 197. The specific page site is 198 to 200 of the separate appendix. The PTAB, as it's called, was construing a provision of the Illinois Administrative Code, which governs their procedures, Section 1910.50C3. And under that provision, the PTAB reads it as mandating them to consider only the statutory ordinance levels of assessment. And the whole equal protection violation here consisted of the assessor's intentional violation of those levels of assessment with regard to the majority of the property in plaintiff's classes, while then still assessing the plaintiff's property at disparately higher levels, at the statutory levels or even higher. The PTAB ruled, and Your Honor can review the ruling in the record, the PTAB ruled that in commercial and industrial cases, which is these plaintiffs, it simply cannot consider those assessment level issues. So there is a bar even stronger in the PTAB remedy and frankly less subject even to debate than in this case where we elected the tax objection remedy. I would also add, Your Honor, the Illinois remedies, the two alternative remedies, it's fine for a state to propose that, but it can't be a trap. They can't say, well, one of the remedies is adequate, but the other is not, and too bad for you, you picked the wrong one. And are these two remedies the only two that are available? So it's not just that 23 isn't working for you. The only options are 16 and 23 and both foreclose this? They are the only ones available, and I would refer, Your Honor, even to the Roswell v. LaSalle Bank case, which approved the former version of the Illinois tax objection remedy 14 years or so before the enactment of the 1995 amendments that we're concerned with here. And Roswell reviewed the Illinois law in some details, mostly in footnotes, but it's clear that alternative equitable remedies, for example, declaratory judgment and injunction actions, are not available to a taxpayer who is simply attacking an assessment on constitutional equal protection grounds. We are bound to these remedies, and now we are bound to the tax objection remedy, and it is simply inadequate. Mr. Davis, the county is telling us that these changes in 1995 were intended to streamline the process for the thousands and thousands of more routine appeals that are pursued every year. I understand, I think, your point that excluding evidence and relevance of methodology and intent forecloses the kind of claim you want to bring. What would the statute need to look like to satisfy both the county and you in this respect? It would have to allow clearly federal constitutional equal protection claims. It's clear that under the Tax Injunction Act and COMETI, the measure of adequacy of a state remedy is its ability to encompass federal constitutional claims regardless of what alternative state causes of action are provided. So it just ought to have a catch-all that says, by the way, all these rules have to bend in the case of a federal constitutional claim. That is correct, Your Honor, and indeed we have attempted to argue to the state court that the statute should be construed differently and that this methodology prohibition in particular that is the most restrictive aspect of the statute and is the foundation of the representation that no constitutional claims can be heard. We have attempted to argue that that should be read as completely inapplicable to a case where federal constitutional claims are alleged. The courts have not agreed, and the Freedmen Court in particular, based on the exact argument that's being asserted still today to this court, has said that constitutional claims must be barred because, and there's actually a logic to it, if that provision applies, well then it says the court cannot consider the central element of a constitutional equal protection claim. Mr. Davis? Yes, Your Honor. Would you consider this an appropriate case for certification to the Illinois Supreme Court? Your Honor, it is possible. What we would draw the court's attention to is, again, we're relying on the rule that the Supreme Court has repeatedly affirmed that any uncertainty or unclarity in the state remedy lifts the bar to federal jurisdiction, and once federal jurisdiction is there, it should be exercised. A quote from the Supreme Court in California versus Grace Brethren Church, which is discussed in the briefs, stating, this court has never hesitated to declare a state refund procedure inadequate to bar federal relief if the taxpayer's opportunity to raise his constitutional claims in the state proceedings is uncertain. So it is our submission, Your Honor, that should the court conclude that there is a possibility for further construction of the state law, for example, by the Illinois Supreme Court, it will necessarily have concluded that there is an uncertainty in the remedy. That uncertainty in the remedy itself creates federal jurisdiction. How do you balance that against the concept of comedy? Your Honor, as this court has held in cases such as Capra, as the Supreme Court held in the Fair Assessment versus McNary case, essentially the Tax Injunction Act standard of plain speedy and efficient, the comedy standard of plain adequate and complete are identical. So if uncertainty is the rule with regard to the TIA, it is also the rule with regard to comedy, and there is no basis for the federal courts to abstain. Now, we think that Illinois would speedily clarify its own law, whether by judicial decision or it might choose to clarify the law by legislative action. I think it is fair to assume that that will happen very swiftly upon the federal courts taking jurisdiction of a state tax case. So I think what the court may consider, but obviously the court, those rules are available. Section 20 of the Illinois Supreme Court rules and 52 of this court's rules do offer that opportunity. But we feel uncertainty virtually resolves it. I am coming to the end of my time. The only other point I think I would leave the court with is we feel that also as the Third Circuit ruled in the Byrne Corporation case, there is a serious procedural due process problem here with this statute as it has been construed and even with the uncertainty that is created on its face. A presumption of validity of the assessment coupled with a heavy burden of proof on the taxpayer, but then with a prohibition against the taxpayer bringing forth the very evidence and the very issues that are at the core of an equal protection claim, that cannot be procedural due process. Do you think the presumption and the standard of proof by themselves are unconstitutional? Not by themselves, Your Honor. I think it is coupled with the methodology prohibition. Civil presumptions are intended to operate in the absence of evidence, not create an absence of evidence. I see my time has expired, so if there are no further questions, we will leave it to my colleague on rebuttal. Thank you, Mr. Davis. Mr. Castiglione? Your Honors, good morning, and thank you, Paul Castiglione, on behalf of the County of Cook and Maria Pappas. My colleague Gretchen Harris-Berry will be here later for the assessor. Your Honors, I'd like to, if I may, address some of the questions that the Court raised to Mr. Davis. First of all, as to whether a constitutional claim can be brought to state court, I would suggest to the Court, I think what is most important here, is the U.S. Supreme Court's admonition in the National Private Truck Council case that Section 1983 does not provide declaratory or injunctive relief against state taxes where state law provides an adequate legal remedy, as it does here. I think this all goes back to that. What's the adequate legal remedy here? Section 2315. But you're saying that they can't raise a constitutional challenge in 2315. Well, the thing about an adequate legal remedy is, I think plaintiff is focused on the cause of action they can bring, and I think the decisions from this Court and the Supreme Court focus more on the remedy. You're overlooking the fact that those decisions also say there has to be a form in which they can air a constitutional challenge. That's in addition to the plain, speedy, and efficient. Well, Judge Hamilton, the last question you asked Mr. Davis raised an interesting question, which was about the standard, the clear and convincing evidence standard and the presumptions in 2315. Does that raise a constitutional issue? Mr. Davis answered, as applied. Well, that's an issue. No, the point has to do with, if I can follow up on Judge Barrett's question. Look, the Supreme Court said in Allegheny-Pittsburgh Coal that this kind of theory works. It does violate the Equal Protection Clause to assess property perfectly under state law if you systematically discriminate against those people whose property you assess perfectly by undervaluing everybody else's. That works. I don't see how that claim can possibly be heard under this statutory remedy. Well, under the statutory remedy, if you have that scenario, if the assessments are done improperly. We assume that. All right. That's right. In our motion to dismiss, we assume that. Then the valuation would be incorrect, and the proof ultimately to get a refund back would be that the assessment was incorrect. No, that doesn't make sense because the theory of the plaintiff's equal protection theory here is that de jure the assessment was proper, right? Right. But that systematically de facto the other properties were undervalued, and so there was an uneven treatment. Again, I don't see how under 2315 you've conceded, right? Well, it's about the difference he's arguing with between residential and commercial property. But if the commercial property of his client is undervalued or overvalued, I should say, and is taxed too much, that can be proved on a 2315 hearing. No, the assumption of this whole case is that the assessments of these plaintiff's property were correct under the letter of state law. Yes. That's the presumption, but he can raise evidence. And that was the point I was getting at, Your Honor. No, that's not the presumption. That's the theory of their case. I'm not sure I understand, Your Honor.  Yes. Perfectly correct under the letter of state law, but discriminatory by undervaluing other properties systematically. How is that theory, which is cognizable by the Supreme Court, to be heard under Article 23? Your Honor, I understand your question. I would take issue with the last part, but it wouldn't be perfectly okay under state law. The value would be incorrect or illegal. Why? Because if I could come in and bring in expert testimony to show the valuation is incorrect, all I have to show it's incorrect, and then the presumption can be rebutted. Mr. Castiglione, you're not tracking here. Their theory is that the assessment of their property is correct in terms of the percentage of market value. Right. Okay? So there's no evidence to show it's incorrect under state law. The problem is with the methods and the intent of the assessor and the assessment of other properties. I think this goes to the 1995 amendments, Your Honor, which shifted the focus of 2315 away from methodology to the results. We understand that. Okay. And I understand why that may make enormous sense in the 7,000 to 9,000 cases a year that you've talked about in your briefs. And that you don't have to answer and that these things have to be dealt with in enormous volumes. This case, with its federal constitutional theory, is very different from those. I would submit it's not, Your Honor. I think it's not. I think this case is about, like any other case, challenging. Counsel, let me give you a hypothetical that might clarify the questions that we're asking here. What if, instead of just saying that commercial and residential properties were treated differently, even though de jure they paid the taxes that Illinois law required, the claim was that black property owners were assessed the de jure rate required by Illinois law, but all white property owners got a break, and so de facto their properties were valued less, so their tax burden would be less. How is that claim brought under Illinois law? Okay, so under your hypothetical, there would be a deliberate discrimination. The intent on the part of the assessor, which 23 says cannot be inquired into in a 2315 action. Not exactly the same facts, but it kind of goes to the Cosgrove case in this court from 2017, where there was a deliberate somewhat almost comical facts. Employee of the township is bitten by a dog of the property owner. Property owner files suit. In turn, the township assessor and the county officials jack up the assessment, and hence the tax of the property owner. So engaging in deliberate conduct to hurt this taxpayer of his property owner. I didn't see any discussion in Cosgrove of this problem. I mean, there has never been so well developed an attack on this procedural problem under Section 23, okay? And you can hypothesize discrimination based on race. You can discriminate against Republicans, against Muslims, anybody you want. Against dog owners. No, let's stick with constitutionally suspect classes. Yes. All right. How do you bring that in light of the statutory prohibition on methods and intent? At the end of the day, if what we're talking about is an assessment that's improper, you bring that the way Cosgrove said. It's a distinction without a difference. I don't think we're having a fruitful discussion at this point. Okay. Well, Your Honors, I would point out to you in a series of cases the court has found under principles of comedy that the remedy provided in Section 2315 does provide a complete plain speeding official remedy under the Tax Injunction Act and an adequate, plain, and complete remedy. And if Plaintiff here wants to chat, I mean, the bottom line is it doesn't really matter in terms of 2315 what the methodology was in the sense that if the assessor had a perfect methodology but came up with the wrong level of assessment, it wouldn't be a defense. If the assessor's left method of assessment was as pristine and perfect as possible but still messed it up, I'm sorry, just what I just said, if the assessment was, on the other hand, improper or not as well calculated as it might be and yet the level of assessment is still correct, there would be, they would, they'd have no complication. That's not this case. That's not this case. Your Honor, I think it is this case. Could I ask you, Mr. Castiglione, let me try from a different angle. In your brief, you talk a little bit about the voluntary payment doctrine. Yes. How is that relevant here? Well, voluntary payment doctrine is still, it's a doctrine in Illinois, and unless a payment is made under protest, there's no cause of action later. This property tax code solves that problem for taxpayers, Section 23-5, by ruling that all payments made are deemed paid under protest. What we know from the Illinois Supreme Court in the case Alvarez v. Pappas is that one of the results of that is that the taxpayers then have to follow the cause of action that the property tax code provides. Okay, that I understand. Is it your theory that if the plaintiffs proceeded in federal court, they would not be able to take advantage of that statutory presumption and the county could argue that they had made their payments voluntarily? I wouldn't, we would not take that position. Okay. I think 23-5. Even if they just brought suit in federal court? Yes, because I think under, well, our position is the Tax Injunction Act and comedy would fire the exercise of jurisdiction. If we disagreed with that. Right. No, I think 23-5 still applies. There's no reason to think it would not be the case. I would like to address one of Judge Barrett's questions about Article 16. Your Honor, we don't know what the Illinois, neither the Illinois Appellate Court nor Supreme Court has weighed in on whether a constitutional claim can be made in the PTAB. Mr. Davis referred to the PTAB's ruling, but that hasn't been tested, so we don't know the answer to that. And if there was ever a place to raise that issue, it seems to me it would be through the Illinois courts, which goes to Judge Flom's question of whether certification would be appropriate here. Our position, of course, is that we think, under the long line of precedence about comedy in the Tax Injunction Act, that this case is no different. Plaintiff is trying to bring an equal protection claim. Are you taking a position that Article 16 is plainly the right route in which to raise a constitutional challenge like this? I think it's possible. We don't know. Possible or plain? Oh, I don't think it prohibits it, frankly. So I don't know if PTAB is correct, but we just don't know until that issue is litigated through the Illinois courts, or they agree on it. So unclear. It's unclear. But it's possible, and I think we can't, I would say this court should not jump to the presumption that it does not provide a constitutional claim. Well, if it's not plain, then the Tax Injunction Act doesn't bar the 19th Amendment. Oh, I see what you're trying to say. Well, it doesn't prohibit it. So I would argue, is it plain that a plaintiff could try? Yes, I think so. But we don't know. We don't know how the courts would rule on that. I also pointed out about Allegheny, Your Honor, Judge Hamilton, that that was a case that didn't involve the Tax Injunction Act, or it was a case out of the West Virginia state courts. No, nobody's worried about it in that respect. Okay. The point is that the court there recognized the equal protection theory that plaintiffs are using here. And that theory needs to be available to them, either in the state courts or in the federal courts. And I don't see a route for them in the state courts at this point. But certainly not one that is plain, I keep mixing up the two, plain adequate and complete under comedy, and plain speedy and efficient. But even putting those aside, putting the Tax Injunction Act and comedy aside, under National Private Truck Council, if they can get their full remedy, which they can here. And these are evidentiary questions for a state court judge, whether or not they could raise the issues that they want to raise regarding the level of assessment. The statute says no. Well, the statute says the assessor is no longer a defendant, and there's no proof of constructive fraud. Not necessary. That's no longer part of it. Those aren't the key sentences. The key phrase is, if an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation, followed by the assessor, board of appeals, or board of review, in making a reviewing assessment, and without regard to the intent or motivation of any assessment. I think the public policy underneath that statute, that language, is we're not going to leave the Illinois legislature post the Ford Motor Company case. May I talk about that for a second? Sure. Ford Motor Company, what was happening prior to 1989, was it was very common for practitioners in this area to come in and say, hey, the assessment is out of whack. It's too high. And use that as proof of constructive fraud. In Ford Motor Company, the Illinois Supreme Court came in and said, you can't really do that. You have to show something. So what happened? Six years later, you have the 1995 amendment saying, no, no. You don't have to do this anymore. So what is the purpose of those amendments? We're not concerned with methodology. We're concerned with results. That, I submit, is what the law is. It gives plaintiffs an opportunity to raise whatever evidence they want. If they want to use the sales ratio study. Let's go back to Judge Barrett's hypothetical. Okay. Maybe it will be useless to try this again, but an assessor who is deliberately undervaluing the properties of favored groups, let's say whites, Democrats, Christians, as compared to blacks, Republicans, Muslims. Well, I think if there's, you know, state courts have concurrent jurisdiction. Constitutional claims can be brought. I would go with the language from Cosgrove, from Judge Caney, that it's a distinction without a difference. At the end of the day, the damage is based on the improper assessment and the additional tax that's being paid. Now, remember, in Cosgrove there was an allegation of deliberate discrimination based on the First Amendment, based on the fact that Cosgroves were urging people to make tax complaints. I think First Amendment rights are every bit as valuable and every bit as important in terms of public policy as the policy against discrimination where someone is a Christian or based on the color of their skin or what have you. And yet, what did the court in Judge Caney say? It's a distinction without a difference. It still comes down to the value of the property. 2315 gives you a remedy for that. And that Tax Adjunction Act, I think it's specifically in Cosgrove, the court held that comedy applied. I see I have about seven seconds left. If the court has no further questions, we'd ask that the court affirm the district court. And I'll turn it over to Ms. Sperry. Thank you. Thank you, Your Honor. Ms. Sperry. Good morning, Your Honors. Gretchen Sperry on behalf of the Assessor's Office. Your Honors, Mr. Castiglione made the arguments with respect to grounds and the assessor also raised an alternative grounds for dismissal, which is that the claims brought by the plaintiffs in any event are beyond the statute of limitations and so should be dismissed on that basis as well. We know from this court's jurisdiction, the statute of limitations in this case begins to run when the plaintiff knows or should know that he has been injured. And here it said the two-year statute of limitations applies. Is it your theory, counsel, that plaintiffs should have filed simultaneously in the federal and state courts? Filed the constitutional claims separately from? No, simultaneously filed the federal claim in both state court, federal court, asked the federal court to stay the case while the case proceeds in the state courts and they try to figure out if they've got a remedy there. Well, the position, the initial position being that we don't think that there is a basis to be in federal court. That's not really a statute of limitations argument, however, and that's the one you're making now. Well, the argument with respect to these claims, it is based on the fact that the remedies are the same in both the state court claims and what the relief that's being requested here. And so the plaintiffs have been filing these tax objection suits, questioning the valuation of their property since 2004 tax year. So they've known about whatever the alleged equal protection violation of the disparity is since at least 2004. And the same is true with respect to the due process claims in count two of their complaint. And so based on the fact that the, when we're looking at the beginning of when the statute of limitations begins to run, we look at when the injury occurred, defining the injury. And the injury here is the same as the one that was alleged in the state court proceedings. So even if there were relief here, it would be time barred. You realize how Kafkaesque that sounds under these circumstances, right? Your theory is that your and the county's theory is that a remedy is available in the state courts. And therefore they had to pursue that. They have been pursuing that. And now that it seems reasonably clear that the state courts are not open, at least sufficiently for purposes of federal constitutional doctrine and comedy in the, in the TIA, you're saying, Oh, now, now the time has passed. First you were too early and then you were too late. When was the right time to bring these claims in federal court? Well, I think what it comes down to is the type of relief the plaintiffs are requesting in this, in this case based on the injury. So if the request for relief here is a refund of an overpayment of taxes, the statute 2315 provides a very clear path as to how to receive. Sorry. My question was when was the right time to bring these claims in federal court? Well, I suppose when they realized in 2004 that there was a disparity in the assessment. So they should have gone to federal court first. Well, that would have been at the same time I suppose that they filed in state court. Okay. So back to my initial question, they should have filed at the same time. I suppose that's true. And ask the federal courts to stay the case for 10 or 15 years to decide well, what purpose would that serve? Well, the, it wouldn't be stayed for 10 or 15 years if the court were to decide whether there was relief allowed in the federal court. Uh, and there was a question about which forum a plaintiff should proceed in that wouldn't necessarily take 10 years for that process to develop. It's taken a long time here. Well, that's for different reasons as well. Um, related mostly to the litigation strategy that the plaintiffs have employed. Um, well it was your client who destroyed the documents, correct? Uh, my doc, my client did not retain the documents. It's true. We were not a party to the claim. There was no litigation hold. Documents continued to be destroyed after the subpoena was issued. Um, that is my, that's my understanding. That was a basis for sanctions in the state courts. Well, there were no sanctions imposed against my client. There was, um, because it was not a party to the under, to the lower court proceedings, but this isn't a claim for spoliation of evidence. Not yet. We'll see. Well, they haven't brought one here or in the state court. They haven't brought a claim for fraud. If there is, uh, a claim, if the plaintiffs are seeking an alternative form of relief, then there's a different cause of action for that. But with respect to the refund for the tax assessment, um, I'm sorry, I'm over time. If I could finish the statement. Um, but because the plaintiffs are pursuing a refund of the overpayment of taxes, the statutes provide the exclusive relief for that regardless of illegality or in incorrectness of those assessments. There are no further questions. Thank you. Thanks for Mr. Fenton. May it please the court. I guess, um, at this point, all I can say is that the only thing that is clear is how unclear the remedy is in state court. If the state's attorney of Cook County is correct, that the statute bars consideration of constitutional claims and bars any evidence of the assessor's methodology or intent that would support an equal protection claim. Then the state law remedies here are inadequate. Not even considering the 15 year delay, uh, that makes the remedies not speedy either. The cases, including, uh, this court's decision in Cosgrove, the Supreme court's decision in Roswell make clear that to constitute a plane remedy, the taxpayer has to be able to have a meaningful opportunity to present his or her constitutional claims in a state forum. And if I understand the state's attorney's brief, and if I understand the state's attorney's argument, uh, that does not exist here. And that in my mind is what truly differentiates this case from Perry, from Capra, and from all of the other decisions of this court finding that Illinois provided a plain speedy and efficient remedy for unconstitutional tax assessments. The state remedy in those cases may well have been adequate, but in this case on this kind of a claim, it was pretty much the same process, right? It's just that, for example, in Capra, the adequacy of state remedies was an afterthought, not even brought up until oral argument before this court. So the parties hadn't developed the case. You all have had this process in your sights from the beginning. It looks like, well, that's, uh, I don't know that we have the process in our sites from the beginning, but certainly the way the process has played out in this case and on the heels of the Friedman opinion, the remedy here is decidedly inadequate because of our inability to present these constitutional claims in the state court. Well, it seems like Capra assumed that 2315 would be available, but what you're saying from your experience is that indeed it is not. Well, Capra didn't deal though with this kind of a claim. I mean, your honor put her finger on it a little earlier, uh, in that our claim is based on the undervaluation of similarly classified properties, not on an improper evaluation of our own property. And that's squarely puts the methodology prohibition, uh, at issue and that you didn't have in Capra. Um, so I think that, that,  all things considered, we simply don't have a plain remedy here. It certainly has not been speedy. And I think there is federal jurisdiction. I do want to come back to the question that judge flum raised regarding certification to the Illinois Supreme court. And I do agree with my colleague that the uncertainty here alone is sufficient for purposes of federal jurisdiction and that this case should proceed. But if there is any question in this court's mind about the uncertainty of Illinois law, uh, or about whether, um, the, um, uh, the state is properly representing, uh, that law. I think that certification may well be appropriate. And one case along those lines that arose in a very similar context is Carver versus Sheriff of LaSalle County.  That was decided by this court, one of two 43 F third three 79. Uh, and in that case you had arguments that were being made by the, uh, LaSalle County state's attorney. There was no clear Illinois guidance was not a tax injunction act case, but this court did certify to the Illinois Supreme court for clarification. So I do think that that is an option available to this court, but we, we do believe that the section 1983 action will proceed. Uh, I do want to say a word, uh, about the statute of limitations, alternative, uh, arguments we did file with this court, uh, on Monday, a rule 23 F letter, uh, where we cited the, uh, PF Chang case. Uh, and that case makes very clear that where you have as here, a dismissal for a lack of federal jurisdiction under 12 B one, uh, it is not appropriate for the court to consider as an alternative basis, uh, for affirmance rule 12 B six arguments such as the statute of limitations argument, uh, that was put forward by the assessor absent a cross appeal. The, the assessor's 12 B six motion was denied as moot by the district court. Uh, there was no cross appeal, uh, to dismiss on statute of limitations grounds would be a merits based, uh, dismissal with prejudice. Uh, and that would expand what the district court did here in the absence of a cross appeal. That's a simply not appropriate. And, um, with that, your honor, uh, or your honors, uh, unless there are any further questions, uh, I think that concludes my remarks. All right. Thank you. Thank you very much. All right. Thanks to all counsel. The case is taken under advisement.